# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**J & J SPORTS PRODUCTIONS, INC.,**

        **Plaintiff,**

v.                                  Case No. 11-C-500

**GMR ENTERTAINMENT LLC d/b/a LaFrontera, and
GUADALUPE RAMIREZ, individually and as a member
of GMR ENTERTAINMENT LLC**

        **Defendants.**

## DECISION AND ORDER

*Nature of the Case*

This Decision and Order addresses Plaintiff J & J Sports Productions, Inc. ("J & J Sports") motion for default judgment on its amended Complaint against the Defendants, GMR Entertainment LLC doing business as LaFrontera ("GMR") and Guadalupe Ramirez, individually and as a member of GMR (collectively the "Defendants"). (ECF No. 27.)

On November 21, 2012, the Clerk of Court entered default against the Defendants. In support of its motion for default judgment, J & J Sports proffers the declaration of Peter S. Balistreri ("Balistreri Decl."), and three exhibits: the rate sheet for the Broadcast (exhibit A); the affidavit of J & J Sports' investigator, Kimberly Lego ("Lego"), (exhibit B); and documentation in support of the claimed attorney fees and expenses (exhibit C).

Because default has been entered against the Defendants the well-pleaded factual allegations are taken as true. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1999). Furthermore, as a general rule, default judgment establishes that the Defendants are liable as a matter of law for each cause of action alleged in the Complaint.

*Background*

By contract, J & J Sports had the exclusive nationwide television right to distribute "*'The Battle of East and West:' Manny Pacquiao v. Ricky Hatton, IBO Light Welterweight Championship Fight Program*" including undercard bouts and the entire television broadcast, scheduled for May 2, 2009 (the "Broadcast") via closed circuit television and via encrypted satellite signal. Subsequently, J & J Sports entered into sub-licensing agreements with various commercial entities throughout North America, including entities within the State of Wisconsin, by which it granted those entities limited sub-licensing rights, specifically the rights to publicly exhibit the Broadcast to the patrons within their respective establishments. The Defendants violated 47 U.S.C. § 553 and § 605, by the interception of, and the exhibition of the "Broadcast" at a business known as LaFrontera located at 6218 22nd Avenue, Kenosha, Wisconsin, ("La Frontera"). (ECF No. 27.) Such actions were willful and for the purposes of direct or indirect financial gain.

Specifically, J & J Sports dispatched Lego to LaFrontera on Saturday, May 2, 2009. (Ex. B.) Lego was present at LaFrontera from 9:38 p.m. to 10:02 p.m. and observed four 32" Sanyo televisions; one large screen television at the rear of the bar; and a large pull down screen. (*Id.*) While inside the establishment, Lego observed the intermission between Round 1 and Round 2 of the pay-per-view boxing match during which a white-haired commentator, Larry Merchant, was interviewing a group of male trumpet players. (*Id.*)

La Frontera has the capacity to accommodate about 250 people. (*Id*.) Lego counted the number of persons in LaFrontera three separate times and the head counts were 28, 36, 41. (*Id*.) Lego observed poster on the walls in Spanish with the dates of upcoming events at LaFrontera in May 2009. There was a $10.00 cover charge to enter LaFrontera. (*See id.*)

### *Statutory Framework*

J & J Sports' Amended Complaint is premised on two separate provisions of Title 47 of the United States Code. Section 605 governs the interception of programming as it travels through the air, while section 553 governs the interception of cable television programming traveling over a cable network. *United States v. Norris*, 88 F.3d 462, 468-69 (7th Cir. 1996); *see* 47 U.S.C. §§ 553, 605.

Section 553 gives the Court discretion to award between $250.00 and $10,000.00 in statutory damages for "all violations," 47 U.S.C. § 553(c)(3)(A)(ii), with the proviso that the maximum award may be increased by up to $50,000.00 for violations "committed willfully for the purpose of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B). Section 553 also authorizes the Court to reduce the award of statutory damages to a minimum of $100.00 if it "finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section." 47 U.S.C. § 553(c)(3)(C).

The terms of section 605(e)(3) allow for statutory damages ranging from $1,000.00 to $10,000.00 for "each violation." 47 U.S.C. § 605(e)(3)(C)(i)(II). The maximum fee increases to $100,000.00 per violation if the violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Section 605 also gives courts the discretion to reduce the statutory award

against an innocent violator, with a prescribed $250.00 minimum for such unintended violations. 47 U.S.C. § 605(e)(3)(C)(iii).

*Analysis*

J & J Sports requests damages in the aggregate amount of $110,000, as well as an award of costs and attorney fees. The breakdown of the damages sought are $10,000 for the violation of § 605(e)(3)(C)(i)(II), and $100,000 for the violation of § 605(e)(3)(B)(iii) and (c)(ii). J & J Sports apparently elects to receive statutory damages because of the difficulty in calculating the full extent of lost profits and additional damages. J & J Sports also asserts that the interception of the encrypted program was not inadvertent and, for that reason, seeks an award of enhanced damages.

While J & J Sports may elect statutory damages, it may not simultaneously pursue damages under both federal acts because they target different types of piracy. *See Norris*, 88 F.3d at 468. Although not explicitly stated, the Court infers from J & J Sports' motion, which only cites subsections of 47 U.S.C. § 605, that it has chosen to pursue relief under that statutory provision.[1] The Defendants are deemed to have violated § 605 by their default. Therefore, the Court considers J & J Sports' damage request under the damage provisions of § 605(e)(3)(C). *See Kingvision Pay-Per-View Ltd. v. Zalazar*, No. 06 Civ. 4441 (RJS), 2009 WL 2482131, at *3 (S.D.N.Y. Aug. 13, 2009).

*Kingvision-Pay Per View v. Scott E's Pub, Inc.,* 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001), summarized the approaches to awarding damages as follows:

> Some courts have assessed statutory damages using as a yardstick the number of patrons in the establishment viewing the show.

---

[1] J & J Sports has not filed a brief in support of its motion for default judgment.

> *See, e.g.,* [*Time Warner Cable v.*] *Googies Luncheonette, Inc.*, 77 F.Supp.2d [485] at 489 [S.D.N.Y. 1999] (listing cases); *Time Warner Cable v. Taco Rapido Rest.*, 988 F.Supp. 107, 111 (E.D.N.Y. 1997) (same). Some courts have awarded a flat sum for each violation. *See, e.g., Googies Luncheonette, Inc.*, 77 F.Supp.2d at 489-90 (listing cases); *Taco Rapido Rest.*, 988 F.Supp. at 111 (same). A multiplier has been used in cases of willful violations. *See, e.g., Googies Luncheonette, Inc.*, 77 F.Supp.2d at 491 (recommending for willful violation an additional three times the base statutory damages award for one defendant, an additional four times the award for another defendant, and an additional eight times the award for a third defendant); *Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp.*, No. CV 88 2834(ASC), 1991 WL 58350, *2 (E.D.N.Y. 1991) (awarding an additional amount for willful violation in the amount of five times the initial statutory damages award).

*Scott E's*, 146 F. Supp. 2d at 961, determined that assessing damages based on the number of patrons would not adequately compensate Kingvision, since the fees Kingvision charged for its programing were based on the maximum fire code occupancy rather the number of persons present. *Scott E's* doubled that fee because the pub had not obtained the event legally and then added enhanced damages of five times that amount based on the court's determination that Scott E's violation was more egregious than others it surveyed. *Id*. The court relied on the facts that the pub had a cover charge, advertised for the event, and showed the program on five television monitors. *Id*. *Scott E's* awarded $18,575 against the pub owner and $18,575 against the business. *Id*.

*Joe Hand Promotions v. Ewer*, No. 09-C-612, 2009 WL 3269658 (E.D. Wis. Oct. 8, 2009), considered a request for an award on default judgment under § 605 for the unauthorized interception of a fight broadcast. In *Ewer*, 2009 WL 3269658, at *3, the amount that Joe Hand would have charged the defendants for the Program was unclear. The court cited *Joe Hand Promotions, Inc., v. Kaczmar*, No. 08 C 2910, 2008 WL 4776365, at *2 (N.D.

Ill. Oct. 29, 2008), which observes that, in most instances where the number of patrons at an establishment is known, courts have used that number as a baseline for calculating statutory damages. *Ewer*, 2009 WL 3269658, at *3.

*Ewer* adopted the $55 per patron figure of *Kaczmar* and assessed $1,595 in statutory damages based on the 29 patrons present in the establishment during the fight broadcast, and imposed enhanced damages applying a multiplier of three times the statutory damages. *Ewer*, 2009 WL 3269658, at *3. In selecting the multiplier, the court noted that the defendants did not appear to have advertised the event, the auditor paid no cover charge, and the establishment did not appear to be profiting "hand over fist" from the piracy since its occupancy was far less than its capacity. *Id*.

In this case, the number of patrons is known and J & J Sports would have charged $1,600 for the Broadcast. However, like *Ewer*, the number of occupants was far less than the capacity of LaFrontera. Therefore, the Court will use the per patron approach as a basis for its initial calculation. *See Ewer*, 2009 WL 3269658, at *3. The average number of patrons in the establishment while the investigator was present was 35. Using the $55 figure per patron, the initial damage amount is $1,925.00. The Court further finds that the violation was wilful, relying on the nature of the violation. *See Ewer*, 2009 WL 3269658, at *1 (citing *Time Warner Cable of N.Y. City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("[s]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems"); *Scott E'S Pub., Inc.*, 146 F. Supp. 2d at 959 ("'Willful' as used in these statutes means a 'disregard for the governing statute and an indifference for its requirements.'") (quoting *ON/ TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)).

J & J Sports suggests that the Court should award $100,000 for the violation of § 605. The sole benchmark provided by § 605 is that damages for willful violations must not exceed $100,000. In order to arrive at an enhanced damage figure, courts have considered factors such as: (1) the number of violations; (2) the defendant's unlawful monetary gains; (3) the plaintiff's significant actual damages; (4) whether the defendant advertised for the event; and (5) whether the defendant collected a cover charge on the night of the event. *See Ewer*, 2009 WL 3269658, at *1 (citing *Kaczmar*, 2008 WL 4776365, at *2). Beyond these factors, "courts also consider the deterrent effect of the award, with an eye toward imposing an award that is substantial enough to discourage future lawless conduct, but not so severe that it seriously impairs the viability of the defendant's business (at least for a first offense)." *Id.* (citing *Kaczmar*, 2008 WL 4776365, at *2).

In determining the appropriate amount of enhanced damages, the Court notes that there is no evidence of any prior violations by either Defendant, a $10.00 cover charge was imposed upon patrons; despite the investigator's report of advertising posters, there is no evidence that the Broadcast was advertised; and the Broadcast was available to viewers on six screens at LaFrontera. Thus, to deter future violations, the Court deems it appropriate impose enhanced statutory damages of $7,700 applying a multiplier of four times the amount of the statutory damages. Thus, the total damage award under § 605 is $9,625.00.

J & J Sports also requests an award of costs in the amount of $953.50 and attorney fees in the amount of $2,250.00, reflecting an hourly rate of $250 for nine hours of attorney time. Under 47 U.S.C. § 605(e)(3)(B), if a violation of the section is found, attorneys' fees and costs are mandatory. The Court has reviewed the supporting documentation and concludes that the claimed attorney fees and costs are reasonable. Based on the foregoing,

J & J Sports' motion for default judgment is granted to the extent that J & J Sports is awarded default judgment against the Defendants, jointly and severally, in the amount of $9,625.00 plus $2,250 in attorneys fees and $953.50 in costs for the violation of 47 U.S.C. § 605. The Court will direct the Clerk of Court to enter judgment accordingly.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

J & J Sports' motion for default judgment against the Defendants is **GRANTED** (ECF No. 38) to the extent that it is awarded damages for the violation of 47 U.S.C. § 605, and attorneys' fees and costs, and **DENIED** in all other respects.

The Defendants, jointly and severally, must pay J & J Sports the amount of $12,828.50 for the violation of 47 U.S.C. § 605.

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

This action is **DISMISSED**.

Dated at Milwaukee, Wisconsin this 20th day of December, 2012.

             **BY THE COURT**

             _____
             **Hon. Rudolph T. Randa**
             **U.S. District Judge**